## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## PANAMA CITY DIVISION

TYLER LAND, MICHAEL BAXTER,       CASE NO.:
HOPE ADKINSON, JUSTIN CALEB
CREAMER, DEREK WILLIAM
BENEFIELD, KENNETH SHAW,
LORA PENN, DARRELL WATKINS,
and SCOTTY J. WILLIAMS,

     **Plaintiffs,**

**v.**

LOUIS S. ROBERTS III, in his official
capacity as Sheriff, Jackson County,
Florida, TREVOR LEE, individually,
ZACHARY WESTER, individually, and
JOHN ALLEN, individually,

     **Defendants.**
_____/

## COMPLAINT

Plaintiffs, TYLER LAND, MICHAEL BAXTER, HOPE ADKINSON, JUSTIN CALEB CREAMER, DEREK WILLIAM BENEFIELD,  KENNETH SHAW, LORA PENN,  DARRELL WATKINS, JOSHUA GRADY CLENNEY, and SCOTTY J. WILLIAMS, hereby sue Defendants, LOUIS S. ROBERTS III, in his official capacity as Sheriff, Jackson County, Florida, TREVOR LEE, individually, ZACHARY WESTER, individually, and JOHN ALLEN, individually, and allege:

## NATURE OF THE ACTION

1.      This is an action brought under the common law of the State of Florida and for violations of the Fourth and Fourteenth Amendments to the United States Constitution, brought through 42 U.S.C. §1983.

2.      This is an action for damages in excess of Seventy-Five Thousand Dollars ($75,000.00) exclusive of costs and interests, and for prospective injunctive relief.  Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §1331 (federal question jurisdiction), 28 U.S.C. §1343 (civil rights claim jurisdiction) and 28 U.S.C. § 1367 (supplemental jurisdiction).

## THE PARTIES

3.      At all times pertinent hereto, Plaintiffs, TYLER LAND, MICHAEL BAXTER, HOPE ADKINSON, JUSTIN CALEB CREAMER, DEREK WILLIAM BENEFIELD, KENNETH SHAW, LORA PENN, DARRELL WATKINS, and SCOTTY J. WILLIAMS, (hereinafter referred to cumulatively as "Plaintiffs") were each residents of the State of Florida and each Plaintiff is *sui juris*.

4.      At all times pertinent hereto, Defendant, LOUIS S. ROBERTS III (hereinafter "ROBERTS" or "SHERIFF"), in his official capacity as Sheriff of Jackson County, has been organized and existing under the laws of the State of

Florida as the Jackson County Sheriff's Office with its headquarters located at Marianna, Florida (hereinafter "JCSO").

5.     At all times pertinent hereto, Defendant, TREVOR LEE (hereinafter "LEE"), has been a resident of the state of Florida. He is *sui juris*. At all times hereto, Defendant Lee was employed as a Deputy with JCSO.

6.     At all times pertinent hereto, Defendant, ZACHARY WESTER (hereinafter "WESTER"), has been a resident of the state of Florida. He is *sui juris*. At all times hereto, Defendant Wester was employed as a Deputy with JCSO.

7.     At all times pertinent hereto, Defendant, JOHN ALLEN (hereinafter "ALLEN"), has been a resident of the state of Florida. He is *sui juris*. At all times hereto, Defendant Allen was employed as a Deputy with JCSO.

## CONDITIONS PRECEDENT

8.     Written notices of intent to initiate litigation on Plaintiffs' state law claims asserted herein, were timely submitted to Defendants pursuant to 768.28(6), Florida Statutes. Plaintiffs have satisfied all conditions precedent to bringing this action, if any. This action is timely filed thereafter.

## STATEMENT OF THE ULTIMATE FACTS-CIVIL CONSPIRACY

9.     At all times pertinent hereto, each of the individual Defendants LEE and WESTER (hereinafter referred to cumulatively as "Individual Defendants") were employed by SHERIFF as JCSO deputies.

10.    The individual Defendants ostensibly acting as SHERIFF's deputies willfully and maliciously agreed to and did engage in a civil conspiracy between and amongst themselves in furtherance of certain criminal, illegal and otherwise improper acts and conduct including but not limited to acts and conduct detailed herein.

11.    While acting in furtherance of the conspiracy, the individual Defendants acting individually or in combination as co-conspirators, committed specific criminal, illegal, and tortious acts against Plaintiffs as described in greater detail herein, including but not limited to placing illegal drugs, drug paraphernalia, narcotics devices, and other contraband on or around Plaintiffs, illegally arresting and detaining Plaintiffs, causing the malicious criminal prosecution of Plaintiffs, making illegal false sworn statements in official documents regarding Plaintiffs, and violating the civil and constitutional rights of Plaintiffs against illegal search and seizure of their person and property, and their illegal and improper detention, prosecution and incarceration.

12.    Each Plaintiff was damaged by the acts and conduct of the Defendants acting individually or in combination as co-conspirators as detailed more fully herein.

## STATEMENT OF THE ULTIMATE FACTS – TYLER LAND

13.     On or around June 14, 2016, Scott Smith (hereinafter "SMITH") an acquaintance of Plaintiff TYLER LAND (hereinafter "LAND") requested LAND provide SMITH and Martha Bellamy (hereinafter "BELLAMY") with transportation to Bonifay, Florida, ostensibly for SMITH to obtain certain automobile parts. LAND agreed to accommodate SMITH's request for transportation.

14.     While en route, SMITH requested that LAND instead take him to a Dollar General retail store in Greenwood, Florida. SMITH withheld and/or concealed information from LAND regarding the actual purpose of this detour. LAND agreed to SMITH's request when SMITH offered to provide additional gasoline money to LAND.

15.     Upon arrival at the Dollar General, SMITH exited LAND's automobile and got into another vehicle parked in the store's lot.  Other passengers in that vehicle, Louis Hall and Alan Hall, both believed to be confidential informants,  exited that vehicle and Alan Hall approached LAND's vehicle, and thereafter engaged BELLAMY and LAND in a brief conversation.

16.     Shortly thereafter, SMITH, Alan Hall and Louis Hall returned to their original vehicles.  Upon entering LAND's vehicle SMITH requested transportation to another unscheduled stop at a residential location.  Once again LAND agreed to

provide SMITH transportation in exchange for additional gasoline money.  Once again SMITH withheld and/or concealed information from LAND regarding the actual purpose of this residential stop.

17.     After transporting SMITH to the residential location, LAND drove SMITH and BELLAMY to their residence and they departed.  Neither SMITH nor BELLAMY explained to LAND the reason for the changes in their transportation needs.

18.     At no time pertinent hereto did LAND knowingly or willfully participate in or otherwise facilitate any illegal drug transaction whatsoever, or possess constructively or otherwise any illegal drugs including but not limited to methamphetamine.

19.     On June 24, 2016, LAND was arrested by a JCSO deputy based on Defendant ALLEN's sworn affidavit.  LAND was taken into custody by SHERIFF, transported and booked into the SHERIFF's detention facility, where he remained for approximately six  and one half (6 and 1/2) months on false and contrived criminal charges.

20.     Defendant ALLEN, knowingly, willfully and maliciously provided a sworn affidavit containing false information that formed the basis for LAND's wrongful arrest and subsequent incarceration by SHERIFF.

21.     LAND was not provided a copy of the SHERIFF's probable cause affidavit, which was signed by ALLEN and dated June 24, 2016, pertaining to his arrest until his arraignment.  LAND was provided an amended probable cause affidavit, which was signed by ALLEN and was not dated, in October of 2016.

22.     Both the SHERIFF's original and amended probable cause affidavits are based on false allegations and include dramatic inconsistencies provided in Defendant ALLEN's sworn affidavits.  The false and inconsistent allegations contained in Defendant ALLEN's sworn affidavits include but are not limited to the date of the alleged transaction being incorrect, information regarding the quantity of illegal drugs and the dollar purchase amount involved in the alleged transaction, and false statements that the alleged transaction occurred in LAND's vehicle, while LAND was present.

23.     Defendant ALLEN's sworn affidavits included false information he knowingly, willfully and maliciously provided as the basis for SHERIFF's arrest warrant for Plaintiff.

24.     On October 4, 2017, all criminal charges against LAND were dismissed by the filing of a Nolle Prosequi.

25.     Plaintiff has retained the undersigned to represent his interests in this cause and is obligated to pay a fee for these services.  Defendants should be made to pay said fee under the laws referenced above.

7

## STATEMENT OF THE ULTIMATE FACTS – MICHAEL BAXTER

26.     At all times pertinent hereto, Defendant LEE was acting in furtherance of the individual Defendants' conspiracy.

27.     On or around December 24, 2017, Plaintiff MICHAEL BAXTER (hereinafter "BAXTER") was stopped without probable cause by LEE while driving on Highway 71, in or around Marianna Florida.

28.     At that time, LEE requested, BAXTER provide his driver's license, current registration, and proof of insurance to LEE. BAXTER complied with LEE's request.

29.     LEE then advised BAXTER he intended to issue a "warning," and deploy his K-9 to search BAXTER's vehicle after issuing the warning, thereby unlawfully extending the stop to deploy the K-9.

30.     BAXTER asked LEE what probable cause existed to search his vehicle and was advised the K-9 search did not require any probable cause.

31.     At all times pertinent hereto LEE knew his detention of BAXTER and search of BAXTER's vehicle was unlawful and was intentionally and maliciously undertaken without the requisite probable cause.

32.     At that time, LEE unlawfully detained BAXTER, when he opened BAXTER's car door, ordered him to exit his vehicle, and demanded BAXTER's car keys.

33.     Before BAXTER was able to comply, LEE attempted to forcibly remove him from the vehicle without unfastening his seatbelt, which Baxter was wearing at the time.  Baxter released his seatbelt and was dragged from his vehicle by LEE and thrown face-first to the pavement, resulting in serious injuries including but not limited to facial abrasions, lacerations, and a chipped tooth.

34.     LEE then placed his full body weight on BAXTER pinning him to the pavement and placed him in handcuffs behind his back.

35.     Next, LEE knowingly, willfully and maliciously proceeded to illegally search BAXTER's vehicle with his K-9, which allegedly had a "positive alert."

36.     LEE and other SHERIFF's deputies, including but not limited to SHANE TIPTON, then illegally searched BAXTER's vehicle but did not locate any illegal drugs or other contraband.

37.     Thereafter, Plaintiff was arrested without probable cause and charged with "Resisting Arrest without Violence" and "Driver in a Possession of Open Container." BAXTER was then transported to the Jackson County Hospital.

38.     From the hospital, BAXTER was taken to the SHERIFF's detention facility and booked on the charges on Christmas Eve.

39.     On December 25, 2017, Christmas Day, Plaintiff was released from the SHERIFF's detention facility.

40.     On May 18, 2018, the State Attorney filed a "No Information" for the charges against BAXTER.

41.     Plaintiff has retained the undersigned to represent his interests in this cause and is obligated to pay a fee for these services.  Defendants should be made to pay said fee under the laws referenced above.

## STATEMENT OF THE ULTIMATE FACTS – HOPE ADKINSON

42.     At all times pertinent hereto, Defendant WESTER was acting in furtherance of the individual Defendants' conspiracy.

43.     On or around July 25, 2017, Plaintiff HOPE ADKINSON (hereinafter "ADKINSON") was traveling as a passenger with driver Jason Kilpatrick (hereinafter "KILPATRICK") east on Highway 90, in or around Grand Ridge, Florida.

44.     WESTER stopped KILPATRICK's vehicle based on a contrived allegation of a non-working headlight.

45.     WESTER approached KILPATRICK's vehicle and falsely claimed to smell the strong odor of marijuana emitting from the interior of the vehicle.

46.     Next, WESTER instructed ADKINSON and KILPATRICK to exit the vehicle and illegally detained them in his patrol car.

10

47.     WESTER then performed an illegal search without probable cause of the KILPATRICK's vehicle.

48.      During the illegal search WESTER placed illegal drugs and drug paraphernalia, including controlled substances, in KILPATRICK's vehicle, including but not limited to Tramadol, Hydrocodone, rolling papers and marijuana residue.

49.     Prior to WESTER's illegal search of KILPATRICK's vehicle, KILPATRICK's vehicle did not contain, and neither ADKINSON nor KILPATRICK in any way possessed any controlled substances, illegal drugs, or drug paraphernalia, whatsoever.

50.     All controlled substances, illegal drugs, and paraphernalia WESTER allegedly found during his illegal search of KILPATRICK's vehicle, were illegally placed in or around the vehicle by WESTER.

51.     ADKINSON was wrongfully arrested by WESTER, handcuffed, and transported to SHERIFF's detention facility where she was booked and charged with two counts of possession of a controlled substance without a prescription, and one count of possession of drug paraphernalia.  ADKINSON was wrongfully detained at SHERIFF's detention facility

52.     On September 19, 2018, the State Attorney filed a Nolle Prosequi, and all charges against ADKINSON from the July 25, 2017 arrest were dismissed.

11

53.    Plaintiff has retained the undersigned to represent her interests in this

cause and is obligated to pay a fee for these services.  Defendants should be made

to pay said fee under the laws referenced above.

## STATEMENT OF THE ULTIMATE FACTS – JUSTIN CALEB CREAMER

54.    At all times pertinent hereto, Defendant WESTER was acting in

furtherance of the individual Defendants' conspiracy.

55.    On or around July 5, 2017, Plaintiff JUSTIN CALEB CREAMER

(hereinafter "CREAMER") was a passenger in an automobile driven by Jason

Faircloth (hereinafter "FAIRCLOTH").

56.    FAIRCLOTH's vehicle was stopped without probable cause by

Defendant WESTER.  WESTER was travelling behind FAIRCLOTH's vehicle at

all times, but Wester falsely claimed he observed a cracked front windshield on

FAIRCLOTH's vehicle.

57.    Thereafter, WESTER allegedly requested permission to search

FAIRCLOTH's vehicle.

58.    Prior to WESTER's search of FAIRCLOTH's vehicle,

FAIRCLOTH's vehicle did not contain, and neither CREAMER nor FAIRCLOTH

in any way possessed any illegal drugs, narcotics equipment, or drug

paraphernalia, whatsoever

59.     During WESTER's search of FAIRCLOTH's vehicle, WESTER placed illegal drugs, narcotics equipment, and drug paraphernalia in FAIRCLOTH's vehicle, including but not limited to 1.2 grams of methamphetamine and a hypodermic needle. WESTER alleged the methamphetamine and hypodermic needle field tested as positive.

60.     All illegal drugs, narcotics equipment, and drug paraphernalia WESTER allegedly found during his search of FAIRCLOTH's vehicle, were illegally placed in the vehicle by WESTER.

61.     CREAMER was wrongfully arrested by WESTER, handcuffed, and transported to SHERIFF's detention facility where he was booked and charged with possession of methamphetamine and drug paraphernalia.  CREAMER was wrongfully detained at SHERIFF's detention facility

62.     Thereafter, CREAMER was placed on probation for the wrongful charges from the July 5, 2017 arrest (Case No. 17-450CF), and on August 22, 2017, he was released from SHERIFF's detention facility.

63.     On October 20, 2017, CREAMER was a passenger in an automobile driven by Wesley Dylan Ranew (hereinafter "RANEW"). At that time RANEW observed WESTER and attempted to flee, but ultimately voluntarily his stopped his vehicle.

64.     After stopping RANEW's vehicle, WESTER searched the vehicle. While searching RANEW's vehicle WESTER placed methamphetamine and marijuana in the vehicle. The illegal drugs WESTER placed in RANEW's vehicle included but were not limited to multiple bags containing methamphetamine, marijuana, and drug paraphernalia.

65.     Prior to WESTER's search of RANEW's vehicle, RANEW's vehicle did not contain, and neither RANEW, CREAMER, nor any other passenger in the vehicle, did in any way possess any illegal drugs, or drug paraphernalia, whatsoever.

66.     All illegal drugs and drug paraphernalia WESTER allegedly found during his search of RANEW's vehicle, were illegally placed in the vehicle by WESTER.

67.     CREAMER was wrongfully arrested by WESTER, handcuffed, and transported to SHERIFF's detention facility where he was booked and charged with possession of methamphetamine, possession of less than 20 grams of marijuana, and possession of drug paraphernalia (Case No. 17-779CF)

68.     On January 2, 2018, Plaintiff was rearrested for violation of probation (Case Nos. 17-450CF and 17-779CF).

69.     On February 28, 2018, CREAMER was placed in the Department of Corrections' custody.

70.     On September 20, 2018, the State Attorney filed a Nolle Prosequi regarding all charges in each case against CREAMER (Case Nos. 17-450CF and 17-779CF) and all charges against CREAMER were dismissed.

71.     Plaintiff has retained the undersigned to represent his interests in this cause and is obligated to pay a fee for these services.  Defendants should be made to pay said fee under the laws referenced above.

## STATEMENT OF THE ULTIMATE FACTS – DEREK WILLIAM BENEFIELD

72.     At all times pertinent hereto, Defendant WESTER was acting in furtherance of the individual Defendants' conspiracy.

73.     At all times pertinent hereto, Plaintiff DEREK WILLIAM BENEFIELD (hereinafter "BENEFIELD") was a United States Army veteran and was honorably discharged.

74.     On or around October 16, 2017, BENEFIELD was stopped by WESTER without probable cause while he was driving south on Highway 69 in Jackson County, Florida. WESTER falsely alleged he observed BENEFIELD swerve into the oncoming traffic lane.

75.     WESTER approached BENEFIELD's vehicle and falsely alleged he smelled the odor of marijuana coming from the vehicle.

76.     WESTER wrongfully detained BENEFIELD, who WESTER ordered to exit his vehicle and stand in front of the patrol car.

77.     WESTER then searched BENEFIELD's vehicle without probable cause at which time Wester placed drugs in BENEFIELD's vehicle including but not limited to methamphetamine and marijuana, as follows a clear plastic case containing methamphetamine residue, a clear jewelry style baggie containing approximately 1.19 grams of methamphetamine, and approximately 1.2 grams of marijuana. WESTER alleged the methamphetamine field tested as positive.

78.     Prior to WESTER's search of BENEFIELD's vehicle, the vehicle did not contain, and BENEFIELD did not in any way possess any illegal drugs or drug paraphernalia whatsoever.

79.     All illegal drugs and drug paraphernalia WESTER allegedly found during his illegal search of BENEFIELD's vehicle were placed in the vehicle by WESTER.

80.     BENEFIELD was wrongfully arrested by WESTER, handcuffed, and transported to SHERIFF's detention facility where he was booked and charged with possession of methamphetamine, possession of marijuana less than 20 grams, and possession of drug paraphernalia. BENEFIELD was held in SHERIFF's detention facility for one (1) month before he was bonded out.

81.     The last week on March 2018, BENEFIELD turned himself into the SHERIFF's detention facility and on May 22, 2018, BENEFIELD was sentenced to eleven (11) months and twenty-nine (29) days in SHERIFF's detention facility, and given one (1) month credit for time served. BENEFIELD was also forced to pay $1,100.00 in various court costs and fines.

82.     BENEFIELD was wrongfully incarcerated from late March 2018 until he was released in September 2018, when the court entered an Order to Set Aside Plea and Vacate Sentence.

83.     On September 20, 2018, the State Attorney filed a Nolle Prosequi in BENEFIELD's case and all charges against him from his October 16, 2017 arrest were dismissed.

84.     Plaintiff has retained the undersigned to represent his interests in this cause and is obligated to pay a fee for these services.  Defendants should be made to pay said fee under the laws referenced above.

## STATEMENT OF THE ULTIMATE FACTS – KENNETH SHAW

85.     At all times pertinent hereto, Defendant WESTER was acting in furtherance of the individual Defendants' conspiracy.

86.     On or around June 7, 2018, Plaintiff KENNETH SHAW (hereinafter "SHAW") was driving south on Highway 71 in Jackson County, Florida, with a passenger, Lora Marie Penn (hereinafter "PENN").

87.     WESTER stopped SHAW's vehicle for an allegedly non-working headlight. Thereafter, WESTER ordered SHAW to exit the vehicle and detained him.

88.     PENN was made to exit SHAW's vehicle and stand with another JCSO deputy Sergeant Carlberg away from the vehicle.

89.     WESTER then proceeded to conduct an unlawful search of SHAW's vehicle at which time he placed methamphetamine and drug paraphernalia in SHAW's vehicle and in PENN's purse.  The items WESTER placed in SHAW's vehicle included but were not limited to a Winston cigarette package that contained a clear plastic baggie containing methamphetamine, a black digital scale which showed methamphetamine residue, and four unused hypodermic syringes, and items WESTER placed in PENN's purse including a hypodermic syringe along with a clear plastic baggie containing methamphetamine.

90.     Prior to WESTER's search of SHAW's vehicle, the vehicle did not contain, and neither SHAW nor PENN did in any way possess any illegal drugs or drug paraphernalia whatsoever.

91.     All illegal drugs and drug paraphernalia WESTER allegedly found during his illegal search of SHAW's vehicle and PENN's purse, were illegally placed in the vehicle and purse by WESTER.

92.     SHAW was wrongfully arrested by WESTER, handcuffed, and transported to SHERIFF's detention facility where he was booked and charged with driving while license suspended or revoked, possession of methamphetamine, and possession of drug paraphernalia.

93.     SHAW was taken to the SHERIFF's detention facility where he was held for more than one (1) month. During the first five (5) days of his incarceration, SHAW was in his cell and was provided no food or water.

94.     Moreover, at the time of arrest, SHAW's vehicle was towed and impounded where it remains because SHAW lacks sufficient funds required to retrieve his vehicle from the impound lot.

95.     On September 20, 2018, the State Attorney filed a No Information on the possession of methamphetamine, and possession of drug paraphernalia charges against SHAW, and on August 14, 2018 filed a Nolle Prosequi on the driving while license suspended or revoked charge, all charges against SHAW were dismissed.

96.     Plaintiff has retained the undersigned to represent his interests in this cause and is obligated to pay a fee for these services.  Defendant should be made to pay said fee under the laws referenced above.

## STATEMENT OF THE ULTIMATE FACTS – LORA PENN

97.     At all times pertinent hereto, Defendant WESTER was acting in furtherance of the individual Defendants' conspiracy.

98.     On or around June 7, 2018, Plaintiff LORA MARIE PENN (hereinafter "PENN") was a passenger in KENNETH SHAW's (hereinafter "SHAW") vehicle driving south on Highway 71 in Jackson County, Florida.

99.     WESTER stopped SHAW's vehicle for an allegedly non-working headlight. Thereafter, WESTER ordered SHAW to exit the vehicle and detained him for driving without a license.

100.   PENN was made to exit SHAW's vehicle and stand with another JCSO deputy Sergeant Carlberg away from the vehicle.

101.   WESTER then proceeded to conduct a search of SHAW's vehicle at which time he placed methamphetamine and drug paraphernalia in SHAW's vehicle and in PENN's purse.  The items WESTER placed in SHAW's vehicle included but were not limited to a Winston cigarette package that contained a clear plastic baggie containing methamphetamine, a black digital scale which showed methamphetamine residue, and four unused hypodermic syringes, and items WESTER placed in PENN's purse included a hypodermic syringe along with a clear plastic baggie containing methamphetamine. WESTER alleged the methamphetamine field tested as positive.

20

102.   Prior to WESTER's search of SHAW's vehicle, the vehicle did not contain, and neither SHAW nor PENN did in any way possess any illegal drugs or drug paraphernalia whatsoever.

103.   All illegal drugs and drug paraphernalia WESTER allegedly found during his search of SHAW's vehicle and PENN's purse, were illegally placed in the vehicle and purse by WESTER.

104.   PENN was wrongfully arrested by WESTER, handcuffed, and transported to SHERIFF's detention facility where she was booked and charged with possession of methamphetamine, and possession of drug paraphernalia.

105.   PENN was detained at the SHERIFF's detention facility until June 19, 2018, when her mother posted bond exhausting her meager financial resources. PENN's mother was thereafter unable to afford medical care and died due to lack of such care.

106.   Thereafter, the State Attorney filed a Nolle Prosequi in PENN's case and all charges against her from her June 7, 2018, arrest were dismissed.

107.   Plaintiff has retained the undersigned to represent her interests in this cause and is obligated to pay a fee for these services.  Defendants should be made to pay said fee under the laws referenced above.

## STATEMENT OF THE ULTIMATE FACTS – DARRELL WATKINS

108.   At all times pertinent hereto, Defendant WESTER and LEE were acting in furtherance of the individual Defendants' conspiracy.

109.   On or about March 20, 2018, Plaintiff DARREL WATKINS (hereinafter "WATKINS") while driving to his employment with a major tax preparation entity, observed WESTER's patrol car following his vehicle. WESTER continued to follow WATKINS for approximately three (3) miles before stopping him.

110.   When WESTER approached WATKINS' vehicle he inquired as to the reason for the stop.  WESTER replied that he thought WATKINS "may be in medical distress." This was a patently untrue and ridiculous assertion by WESTER as WATKINS was lawfully operating his vehicle at all times pertinent to this stop.

111.   After unlawfully making the stop, WESTER requested WATKINS' drivers license which he did not have because he unable to locate his wallet that morning.

112.   WESTER requested WATKINS' name and returned to his patrol car, ostensibly to radio in the information.

113.   Upon returning to WATKINS' vehicle WESTER falsely stated that he smelled marijuana and ordered WATKINS to exit the vehicle. WATKINS

complied and exited the vehicle, but advised Wester that he had not, and never possessed or used marijuana.

114.   WESTER then retrieved an item from his patrol car and returned to WATKINS' vehicle.  WESTER then illegally searched WATKINS' vehicle without probable cause and at that time placed methamphetamine and marijuana in the vehicle.

115.   WESTER falsely alleged he located 26.4 grams of methamphetamine in WATKINS' vehicle.

116.   Prior to WESTER's search of WATKINS' vehicle, the vehicle did not contain, and WATKINS did not in any way possess any illegal drugs, drug paraphernalia, or narcotics equipment, whatsoever.

117.   All illegal drugs, paraphernalia, or narcotics equipment, found during WESTER's search of WATKINS' vehicle, were illegally placed in the vehicle by WESTER.

118.   WATKINS was wrongfully arrested by WESTER, handcuffed, and transported to SHERIFF's detention facility where he was booked and charged with possession and/or trafficking of methamphetamine.

119.   WATKINS was detained at SHERIFF's detention facility and was required to pay a bond in the amount of $5,100 to secure his release (Case No. 322018CF00195A).

120.   After his release from SHERIFF's detention facility, WATKINS was stopped by LEE on March 24, 2018, for an alleged non-working brake light.

121.   On March 24, 2018, immediately prior to WATKINS' stop, LEE can be seen and heard clearly on his body camera video communicating with WESTER on his police radio regarding details of the stop.  After the stop, LEE appears to make a cellular telephone call to "ZACH" to discuss the stop, and advises him of the location of the stop.   During the call, LEE advises "ZACH" he intends to perform a consent search of WATKINS' vehicle.

122.   Thereafter, LEE threatened to perform a K-9 search of WATKINS' vehicle as pretext to secure WATKINS' consent to search his vehicle.

123.   Under duress, WATKINS agreed to LEE's search request as WESTER arrived at the location of the stop, presumably per LEE's earlier request.

124.   LEE and WESTER coordinated to place illegal drugs, including but not limited to methamphetamine in WATKINS' vehicle during the search on March 24, 2018.  LEE alleged the methamphetamine removed from WATKINS vehicle field tested as positive.

125.   Prior to WESTER and LEE's search of WATKINS' vehicle, the vehicle did not contain, and WATKINS did not in any way possess any illegal drugs, drug paraphernalia, or narcotics equipment, whatsoever.

126.   All illegal drugs, paraphernalia, or narcotics equipment, found during WESTER and/or LEE's 's search of WATKINS' vehicle on March 24, 2018, including but not limited to methamphetamine, were illegally placed in the vehicle by WESTER and/or LEE.

127.   Thereafter, on March 24, 2018, WATKINS was arrested by LEE and transported to SHERIFF's detention facility where he was booked and charged with possession and/or trafficking of methamphetamine (Case No. 322018CF00222A).

128.   WATKINS lost six days of work as the result of his wrongful arrest and detention, during tax season which ended on April 28, 2018, and WATKINS' employment was phased out for 2018.

129.   WATKINS name and the wrongful criminal charges against him were published on television and in the local newspaper, creating tremendous obstacles for his employment prospects.

130.   WATKINS is diabetic, and when he was under stress from the false arrest, he had significant health issues directly related to the stress and related problems resulting from his false arrest by WESTER.

131.   On July 31, 2018, the State Attorney for the Fourteenth Judicial Circuit dismissed all charges against WATKINS in Case No. 322018CF00222A.

132.    On August 15, 2018, after WATKINS suffered the stigma of his

wrongful arrest for many months, the State Attorney for the Fourteenth Judicial

Circuit dismissed all charges against WATKINS in Case No. 322018CF00195A.

133.    Plaintiff has retained the undersigned to represent his interests in this

cause and is obligated to pay a fee for these services.  Defendants should be made

to pay said fee under the laws referenced above.

## STATEMENT OF THE ULTIMATE FACTS – SCOTTY J. WILLIAMS

134.    At all times pertinent hereto, Defendant WESTER and LEE were each

acting in furtherance of the individual Defendants' conspiracy.

135.    On or around July 21, 2017, Plaintiff SCOTTY J. WILLIAMS

(hereinafter "WILLIAMS") was driving a vehicle headed east on Highway 90 in

Jackson County, Florida, when he was stopped by WESTER.

136.    WESTER claimed WILLIAMS was stopped due to a non-working

headlight.  Thereafter, WESTER falsely stated he smelled marijuana coming from

WILLIAMS' vehicle.

137.    WESTER instructed WILLIAMS to exit his vehicle and thereafter,

proceeded to search the vehicle without probable cause.  During WESTER's

search of WILLIAMS' vehicle,  WESTER  placed illegal drugs, narcotics

equipment  and drug paraphernalia, including but not limited to methamphetamine,

narcotics equipment, drug paraphernalia and marijuana in the vehicle.  The items

WESTER placed in WILLIAMS' vehicle, included but were not limited to an orange pill bottle containing methamphetamine residue, a coffee filter that contained 1.02 grams of methamphetamine, a black zip up style sunglass case containing a hypodermic syringe that contained methamphetamine residue, and a clear plastic bag containing marijuana.

138.   Prior to WESTER's search of WILLIAMS' vehicle, the vehicle did not contain, and WILLIAMS did not in any way possess any illegal drugs, narcotics equipment, or drug paraphernalia, whatsoever.

139.   All illegal drugs, narcotics equipment, and drug paraphernalia WESTER allegedly found during his illegal search of WILLIAMS' vehicle, were illegally placed in the vehicle by WESTER.

140.   WILLIAMS was wrongfully arrested by WESTER, handcuffed, and transported to SHERIFF's detention facility where he was booked and charged with possession of methamphetamine (Case No. 322017CF00495A), possession of marijuana, possession of drug paraphernalia, and driving while license suspended (Case No 322017MM00990A).

141.   The charges against WILLIAMS in Case Nos. 322017CF00495A were Nolle Prosequi by the State Attorney on October 3, 2017, and a No Information was filed by the State Attorney in Case No 322017MM00990A on

March 16, 2018.  All charges from the July 21, 2017 arrest of Williams were dismissed.

142.  Plaintiff has retained the undersigned to represent his interests in this cause and is obligated to pay a fee for these services.  Defendants should be made to pay said fee under the laws referenced above.

## COUNT I
## COMMON LAW FALSE IMPRISONMENT/ARREST
### (Brought by All Plaintiffs Against Defendant Roberts)

143.  Paragraphs 1 through 142 are hereby re-alleged and incorporated by reference in this Count.

144.  This is an action against Defendant ROBERTS in his official capacity for common law false imprisonment/arrest.  This Count is pled in the alternative and for the purposes of this count, individual Defendants, WESTER, LEE, and ALLEN, were acting within the course and scope of employment with Defendant SHERIFF.

145.  All Plaintiffs are entitled to relief against ROBERTS in that he, through his employees and/or agents, intentionally and unlawfully detained and restrained each Plaintiff, when each Plaintiff was unlawfully seized and deprived of their liberty without any reasonable cause or color of authority and maintained such complete restraint and deprivation for a period of time.

157.   This unlawful restraint of the Plaintiffs' liberty was also accomplished by ROBERTS' confining Plaintiffs to an area in which the Plaintiffs did not wish to be confined.

158.   Plaintiffs were further restrained by ROBERTS' use of coercive words and threats of force as well as actual force and immediate means of coercion against Plaintiffs, so that the Plaintiffs were restrained and deprived of liberty. ROBERTS restrained Plaintiffs without any justification and in the absence of probable cause.  ROBERTS conducted no independent investigation into whether any criminal conduct had occurred.

159.   At all times material to this action, and at all times during which Plaintiffs were being unlawfully restrained, the Plaintiffs were restrained against their will, and without consent, so that Plaintiffs were not free to leave their places of confinement.

160.   As a direct and proximate cause of Defendant ROBERTS' actions, Plaintiffs have been damaged, which damages include: mental anguish, pain and suffering, bodily injury, loss of capacity for the enjoyment of life, embarrassment, humiliation, loss of reputation, lost employment opportunities, lost wages, and the loss of other emoluments.  These damages have occurred at present, in the past and will most likely occur in the future.  Defendant ROBERTS is jointly and severally liable to Plaintiffs.

**COUNT II**
**CIVIL CONSPIRACY**
**(Brought by All Plaintiffs Against the Individual Defendants**
**Wester and Lee)**

161.   Paragraphs 1 through 142 above are re-alleged and incorporated

herein by reference.

162.   This is an action against individual Defendants WESTER and LEE for

civil conspiracy to violate Plaintiffs constitutional rights and other rights.

163.   Individual Defendants WESTER and LEE agreed to commit and did

commit unlawful and tortious acts against Plaintiffs, and acted collectively in

doing so, including but not limited to conducting illegal traffic stops, conducting

illegal searches of Plaintiffs' vehicles and persons, placing illegal drugs, drug

paraphernalia, narcotics equipment and devices, and other contraband on or around

Plaintiffs, illegally arresting and detaining Plaintiffs, causing the malicious

criminal prosecution of Plaintiffs, making illegal false sworn statements in official

documents regarding Plaintiffs, and violating the civil and constitutional rights of

Plaintiffs against illegal search and seizure of their person and property, and their

illegal and improper detention, prosecution and incarceration, for which there was

no justification or legal basis.

164.   As a direct and proximate result of the actions taken by individual

Defendants WESTER and LEE, Plaintiffs suffered serious injury, including but not

limited to economic damages, including past and future wage losses, loss of

benefits, and other tangible and intangible damages.  These damages have occurred in the past, are occurring at present and will occur in the future.

165.   As a direct and proximate result of the foregoing unlawful and tortious acts and omissions taken by individual Defendants WESTER and LEE, Plaintiffs suffered violations of their civil and constitutional rights, unlawful seizures of their person and property, loss of liberty, mental anguish, emotional distress, expense, loss of benefits, embarrassment, humiliation, damage to reputation, illness, lost wages, loss of capacity for the enjoyment of life, and other tangible and intangible damages.  These damages are continuing and are permanent.  Plaintiffs are entitled to injunctive/equitable relief and punitive damages.

## COUNT III
## COMMON LAW FALSE IMPRISONMENT/ARREST
### (Brought by All Plaintiffs Against the Individual Defendants
### Wester, Lee and Allen)

166.   Paragraphs 1 through 142 are hereby re-alleged and incorporated by reference in this Count.

167. This count sets forth claims against the individual Defendants, WESTER, LEE, and ALLEN (for Land only), for common law false imprisonment/arrest. This count is pled in the alternative and for the purpose of this count, individual Defendants, WESTER, LEE, and ALLEN, were acting outside the course and scope of employment with Defendant SHERIFF.

168.  Plaintiffs are entitled to relief against Defendants WESTER, LEE, and ALLEN in that they willfully, maliciously, intentionally and unlawfully detained and restrained Plaintiffs against their will, deprived Plaintiffs of their liberty without any reasonable cause or color of authority and maintained such complete restraint and deprivation for a period of time.

169.  This unlawful restraint of the Plaintiffs' liberty was also accomplished by Defendants WESTER, LEE, and ALLEN confining Plaintiffs to an area in which the Plaintiffs did not wish to be confined.

170.  Plaintiffs were further restrained by WESTER, LEE, and ALLEN's use of coercive words and threats of force as well as actual force and immediate means of coercion against Plaintiffs so that the Plaintiffs were restrained and deprived of liberty.   WESTER, LEE, and ALLEN restrained Plaintiffs without any legal justification and in the absence of probable cause.

171. At all times material to this action, and at all times during which Plaintiffs were being unlawfully restrained, Plaintiffs were restrained against their will, and without consent, so that Plaintiffs were not free to leave their places of confinement. The individual Defendants WESTER, LEE, and ALLEN acted in bad faith and with malicious purpose, in a manner exhibiting wanton and willful disregard of human rights or safety.

172.   As a direct and proximate result of the Individual Defendants' actions, Plaintiffs have been damaged, which damages include: grave mental anguish, pain and suffering, loss of capacity for the enjoyment of life, embarrassment, humiliation, loss of reputation, and the loss of other emoluments.  These damages have occurred at present, in the past and will most likely occur in the future.  Plaintiffs are entitled to punitive damages under this count.

<u>**COUNT IV**</u>
**FALSE ARREST BROUGHT UNDER 42 U.S.C. §1983**
**(Brought by All Plaintiffs Against Defendant Roberts)**

173.   Paragraphs 1 through 142 are hereby re-alleged and incorporated by reference in this Count.

174.   This count sets forth a claim against Defendant ROBERTS, who through his officers, deputies, employees, and agents, violated Plaintiffs' rights under the Fourth Amendment to the United States Constitution. These violations were of the type and character as to which any reasonable law enforcement agency and/or officer would be aware.

175.   Through his officers, employees, and agents, and through his own actions and inactions ROBERTS, misused his powers, possessed by virtue of state law and made possible only because ROBERTS, his officers, employees and agents were clothed with the authority of state law. The violations of Plaintiffs'

rights, as described above, occurred under color of state law and are actionable under 42 U.S.C. §1983.

176.   The foregoing actions of ROBERTS were taken in bad faith, with malicious purpose, and in a manner exhibiting willful and wanton disregard of human rights, safety and property, and were engaged in without any lawful justification and in the absence of probable cause.  ROBERTS knew or should have known that there was no probable cause or other legal justification to arrest Plaintiffs, given the circumstances present with SHERIFF's deputies and other personnel including but not limited to individual Defendants, WESTER, LEE, and ALLEN, who routinely engaged in a systematic pattern and practice of making illegal traffic stops,  planting illegal drugs, drug paraphernalia, narcotics equipment, and other contraband on Plaintiffs person or in their presence, making false statements in probable cause affidavits and other charging documents, and causing the false arrests, and seizures of Plaintiffs.

177.  Based upon the facts presented to ROBERTS through his officers, employees, and agents and applicable law, no reasonable law enforcement agency or officer could have concluded that there existed any probable cause to arrest Plaintiffs. The law was well settled and clearly established that the actions of ROBERTS, his delegates, deputies, officers, employees and agents constituted

false arrest under the Fourth Amendment to the United States Constitution at the time the actions were engaged in.

178. The actions or inactions of ROBERTS as set forth in part above constituted deliberate indifference and/or reckless disregard for the constitutional rights of Plaintiffs.

179. ROBERTS acted with deliberate indifference in the failure to implement adequate hiring and supervisory procedures--or implemented no such policies or procedures-- to prevent the harm that was caused to Plaintiffs including policies or procedures to properly identify suspects who committed criminal activity; policies and procedures to identify officers who falsify facts to support probable cause affidavits; policies and procedures to supervise officers/deputies in SHERIFF's employ; policies and procedures to detect officers/deputies who may engage in criminal activity by planting drugs on innocent citizens like Plaintiffs; and policies and procedures to properly discipline officers/deputies who willfully trample on the constitutional rights of law abiding citizens like Plaintiffs, and to prevent the type of harm described in part above, as a direct result of which Plaintiffs were injured. ROBERTS was also deliberately indifferent in failing to train his officers in basic human dignity which resulted in constitutional violations as set forth in part above.

180. ROBERTS was deliberately indifferent in hiring, retaining and supervising the individual Defendants, WESTER, LEE, and ALLEN, and other deputies, as they were known to have engaged in constitutional violations prior to their illegal and malicious actions against Plaintiffs described herein.   After knowledge of the constitutional violations by WESTER, LEE, and ALLEN, and other deputies, ROBERTS failed to investigate their actions or to fire them, which ultimately led to the violation of Plaintiff's constitutional rights.

181.   ROBERTS, individually and through delegated final decision makers, acted under color of state law and failed to supervise, investigate and discipline the WESTER, LEE, and ALLEN and other officers/deputies, employees and agents *as* alleged herein, and was deliberately indifferent in their training and supervision, the results of which were constitutional violations against Plaintiffs and others. ROBERTS and his delegates failure to, supervise, investigate and discipline WESTER, LEE, and ALLEN and other officers/deputies, employees and agents, constitutes a willful failure to implement or enforce SHERIFF's policies and law by ROBERTS which resulted in the deliberate indifference to the constitutional rights of the Plaintiffs set forth above.

182. ROBERTS supervisory and delegated final policymakers also, after notice of the constitutional violations alleged herein, officially sanctioned these actions and refused to discipline WESTER, LEE, and ALLEN the individually

named Defendants and other officers/deputies, employees, and agents, which established a policy and practice, by a final policymakers, that directly or indirectly resulted in the violation of Plaintiffs constitutional rights.

183.   As a direct and proximate cause of ROBERTS' actions, Plaintiffs have been damaged, which damages include: grave mental anguish. pain and suffering, loss of capacity for the enjoyment of life, embarrassment, humiliation, lost wages and other tangible losses, loss of reputation, and the loss of other emoluments. These damages have occurred at present, in the past and will most likely occur in the future.

### COUNT V
### FALSE ARREST BROUGHT UNDER 42 U.S.C. §1983
### (Brought by All Plaintiffs Against Individual Defendants
### Wester, Lee, and Allen)

184.   Paragraphs 1 through 142 are hereby re-alleged and incorporated by reference in this Count.

185.   This count sets forth a claim against individual Defendants WESTER, LEE, and ALLEN (for Land only) who individually and in tandem violated Plaintiffs' rights under the Fourth Amendment to the United States Constitution. These violations were of the type and character as to which any reasonable law enforcement agency or officer would be aware.

186.   The individual Defendants WESTER, LEE, and ALLEN misused their power, possessed by virtue of state law and made possible only because they were clothed with the authority of state law. The violations of Plaintiffs' rights, as described above, occurred under color of state law and are actionable under 42 U.S.C. §1983.

187.   The foregoing actions of the individual Defendants WESTER, LEE, and ALLEN (for Land only) were engaged in bad faith, with malicious purpose, and in a manner exhibiting willful and wanton disregard of human rights, safety and property, and were engaged in without any lawful justification and in the absence of probable cause.  Defendants knew or should have known that there was no probable cause to arrest Plaintiffs given the circumstances present and the clearly established law on the proof needed to establish "arguable probable cause." Defendants WESTER and/or LEE, illegally possessed and planted illegal drugs, controlled substances, narcotic equipment and drug paraphernalia on each Plaintiff, with the exception of Plaintiff LAND.  WESTER, LEE, and ALLEN falsified probable cause affidavits and other documents to cause the arrest and malicious prosecution of Plaintiffs.  These actions violated the Fourth Amendment to the United States Constitution.

188.    Based upon the facts presented to Defendants WESTER, LEE, and ALLEN, no reasonable law enforcement officer could have concluded that there existed any probable cause to arrest Plaintiffs. The law was settled and clearly established that the actions of Defendants WESTER, LEE, and ALLEN constituted false arrest under the Fourth Amendment to the United States Constitution at the time the actions were engaged in.

189.    The actions or inactions of Defendants WESTER, LEE, and ALLEN as set forth in part above constituted a deliberate indifference or reckless disregard for the safety of Plaintiffs when they knew of and disregarded a risk to Plaintiffs' health and safety.

190.    As a direct and proximate cause of Defendants WESTER, LEE, and ALLEN's actions, Plaintiffs have been damaged, which damages include: grave mental anguish, pain and suffering, loss of capacity for the enjoyment of life, embarrassment, humiliation, loss of reputation, and the loss of other emoluments. These damages have occurred at present, in the past and will most likely occur in the future.  Plaintiffs are entitled to punitive damages.

## COUNT VI
## COMMON LAW MALICIOUS PROSECUTION
### (Brought by All Plaintiffs Against Individual Defendants
### Lee, Wester and Allen)

191.     Paragraphs 1 through 142 are hereby re-alleged and incorporated by reference in this Count.

192.   This count sets forth claims against individual Defendants WESTER, LEE, and ALLEN (for Land only) for malicious prosecution, and is pled in the alternative.  For purposes of this count, Defendants WESTER, LEE, and ALLEN were acting outside the course and scope of employment with SHERIFF.

193.   Defendants WESTER, LEE, and ALLEN caused the commencement and/or continuation of criminal proceedings against Plaintiffs.   The subject proceedings had bona fide terminations in Plaintiffs' favor in that the charges against Plaintiffs were dropped or dismissed or otherwise resolved in Plaintiffs' favor.

194.   There was no probable cause or reasonable basis in fact or in law for the individually named Defendants WESTER, LEE, and ALLEN to cause the commencement of the criminal proceedings against Plaintiffs.

195.   The individually named Defendants WESTER, LEE, and ALLEN with intentionally and with malice in initiating the criminal proceedings against Plaintiffs, as well as in making the arrests of Plaintiffs, and Defendants WESTER, LEE, and ALLEN knew that their actions against Plaintiffs were not supported by even arguable probable cause.

196.   As a direct and proximate cause of the Individual Defendants WESTER, LEE, and ALLEN actions, Plaintiffs have been damaged, which damages include: mental anguish, pain and suffering, loss of capacity for the enjoyment of life, embarrassment, humiliation, bodily injury, and loss of reputation.   These damages have occurred at present, in the past and will most likely occur in the future. Plaintiffs are entitled to punitive damages under this count.

## COUNT VII
## MALICIOUS PROSECUTION BROUGHT UNDER 42 U.S.C. §1983
### (Brought by All Plaintiffs Against Individual Defendants
### Lee, Wester and Allen)

197.   Paragraphs 1 through 142 are hereby re-alleged and incorporated by reference in this Count.

198.   This count sets forth a claim against Defendants WESTER, LEE, and ALLEN, who individually and in tandem, violated Plaintiffs' rights under the Fourth Amendment to the United States Constitution. These violations were of the type and character as to which any reasonable law enforcement agency or officer would be aware. This count is pled in the alternative and for purposes of this count, Defendants WESTER, LEE, and ALLEN, were acting outside the course and scope of employment with Defendant SHERIFF.

199.   The individual Defendants WESTER, LEE, and ALLEN, misused their power, possessed by virtue of state law and made possible only because they

were clothed with the authority of state law. The violations of Plaintiff s rights by Defendants WESTER, LEE, and ALLEN, as described herein, occurred under color of state law and are actionable under 42 U.S.C. §1983.

200.   Defendants WESTER, LEE, and ALLEN intentionally, maliciously, and unlawfully caused the commencement and/or continuation of criminal proceedings against Plaintiffs.  The subject proceedings had bona fide terminations in Plaintiffs' favor in that the charges against Plaintiffs were dropped or dismissed or otherwise resolved in Plaintiffs' favor.

201.   There was no probable cause or reasonable basis in fact or in law for the individually named Defendants WESTER, LEE, and ALLEN to cause the commencement of the criminal proceedings against Plaintiffs.

202.   The individually named Defendants WESTER, LEE, and ALLEN acted with malice in initiating the criminal proceedings against Plaintiffs, as well as in causing their arrests, detention and seizure in violation of Plaintiffs' rights under the Fourth Amendment to the United States Constitution. Defendants WESTER, LEE, and ALLEN knew that their actions against Plaintiffs were not supported by even arguable probable cause, and were instead initiated with willful and malicious intent to harm Plaintiffs.

203.   As a direct and proximate cause of the Individual Defendants WESTER, LEE, and ALLEN's, Plaintiffs have been damaged, which damages

include: mental anguish, pain and suffering, loss of capacity for the enjoyment of life, embarrassment, humiliation, bodily injury, and loss of reputation.   These damages have occurred at present, in the past and will most likely occur in the future. Plaintiffs are entitled to punitive damages under this count.

## COUNT VIII
## NEGLIGENCE
### (Brought by All Plaintiffs Against Defendant Roberts)

204.   Paragraphs 1 through 142 are hereby re-alleged and incorporated by reference in this Count.

205.   This count sets forth a claim against Defendant ROBERTS for common law negligence. Defendant ROBERTS knew or should have known that Plaintiffs were with a zone of risk related to contact with its agents/employees.

206.   Defendant ROBERTS owed a duty of care to Plaintiffs due to the nature of the relationship between Plaintiffs and Defendant ROBERTS and/or Defendant ROBERTS had a special relationship with Plaintiffs and, consequently, a duty of care was attendant thereto. Alternatively, legal duties devolved upon Defendant ROBERTS **because** Plaintiffs were in the foreseeable zone of risk to be harmed by the actions thereof.

207.   Defendant ROBERTS **further** breached its duty to properly supervise its employees and agents, to ensure the safety of the Plaintiffs and/or to properly investigate the circumstances of criminal and/or tortious activity.

208.   The actions of Defendant ROBERTS were "operational" functions, i.e., functions that were not necessary to or inherent in policymaking or planning, that merely reflected secondary decisions as to how policies or plans were to be implemented.

209.   As a direct and proximate result of the above unlawful acts and omissions, Plaintiffs sustained economic damages, including lost income, sustained emotional pain, anguish, humiliation, insult, indignity, loss of self-esteem, inconvenience and hurt, all because of the actions of Defendant ROBERTS and is therefore entitled to compensatory damages.

**COUNT IX**
**COMMON LAW NEGLIGENT HIRING, RETENTION,**
**TRAINING, AND SUPERVISION**
**(Brought by All Plaintiffs Against Defendant Roberts)**

210.  Paragraphs 1 through 142 are hereby re-alleged and incorporated by reference in this Count.

211.  This count sets forth a claim against Defendant ROBERTS for negligent hiring, retention, training and supervision.

212.  Defendant ROBERTS breached its duty to properly supervise the Individual Defendants WESTER, LEE, and ALLEN and Allen and other officers, employees, and agents.

213.  The breach of this duty to properly hire, retain, train and supervise the Individual Defendants WESTER, LEE, and ALLEN and other officers, employees and agents resulted in damages and injury to Plaintiffs.  Defendant ROBERTS knew or should have known that the actions, omissions, and derelictions of officers, employees, and agents could cause injury to Plaintiffs.

214.  Defendant ROBERTS breached its duties to hire and/or maintain the employment of employees who were fit for the duties they performed and to supervise and train its employees and agents.

215.  As a direct and proximate result of the above unlawful acts and omissions, Plaintiffs sustained damages, including emotional pain, anguish, humiliation, insult, indignity, loss of self-esteem and inconvenience and hurt and are therefore entitled to compensatory damages pursuant to the above provisions.

## COUNT X
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (Brought by All Plaintiffs Against Individual Defendants
### Lee, Wester and Allen)

216.  Paragraphs 1 through 142 are hereby re-alleged and incorporated by reference in this Count.

217.  This count sets forth a claim against Defendants WESTER, LEE, and ALLEN for intentional infliction of emotional distress. This claim is pled in the alternative, and for the purpose of this claim, Defendants WESTER, LEE, and

ALLEN were acting outside the course and scope of their employment with SHERIFF.

218.   Defendants WESTER, LEE, and ALLEN's conduct set forth in part above included several instances of mistreatment of Plaintiffs.  This conduct by Defendants WESTER, LEE, and ALLEN, and Allen constituted extreme and outrageous conduct that would shock the conscience of a reasonable person and goes beyond all bounds of decency.  Defendants WESTER, LEE, and ALLEN's conduct was the proximate cause of Plaintiffs' emotional distress and Plaintiffs' emotional distress were severe.  Defendants WESTER, LEE, and ALLEN's conduct constitutes the actionable tort of intentional infliction of emotional distress.

219.   Defendants WESTER, LEE, and ALLEN's maliciously and intentionally caused Plaintiff emotional distress by making false statements all to cause Plaintiffs to be unjustifiably subjected to arrest, imprisonment, and prosecution. These actions by Defendants WESTER, LEE, and ALLEN's were taken in bad faith and with a malicious purpose and with a willful disregard for Plaintiffs' rights.

220.   As a direct and proximate result of the above unlawful acts and omissions, Plaintiffs were injured and sustained economic damages, including lost income, lost prestige, lost potential employment and good standing in the

community, he has lost the capacity for the enjoyment of life; sustained severe

emotional pain, anguish, humiliation, insult, indignity, loss of self-esteem,

inconvenience and hurt, because of Defendants WESTER, LEE, and ALLEN's

actions, and is therefore entitled to compensatory damages pursuant to the above

provisions.  Plaintiffs' damages are continuous; they have occurred in the past, are

occurring in the present, and will continue to occur in the future.  Plaintiffs are

entitled to punitive damages under this count.

**COUNT XI**
**FOURTEENTH AMENDMENT VIOLATIONS**
**(Brought by All Plaintiffs Against Defendant Roberts)**

221.   Paragraphs 1 through 142 are hereby re-alleged and incorporated by

reference in this Count.

222.   This count sets forth claims against Defendant ROBERTS for abuse of

power and the violation of the Plaintiffs' property and liberty interests under the Due

Process clause of the Fourteenth Amendment, brought through U.S.C. §1983.  This

count is set forth in the alternative and both the procedural and substantive Due

Process rights of the Plaintiffs are implicated and a claim for outrageous and

shocking the conscious conduct is made herein.

223.   Defendant ROBERTS violated the substantive and procedural Due

Process clause of the Fourteenth Amendment by conducting illegal traffic stops,

conducting illegal searches of Plaintiffs' vehicles and persons, placing illegal

drugs, drug paraphernalia, narcotics equipment and devices, and other contraband on or around Plaintiffs, illegally arresting and detaining Plaintiffs, causing the malicious criminal prosecution of Plaintiffs, making illegal false sworn statements in official documents regarding Plaintiffs, and violating the civil and constitutional rights of Plaintiffs against illegal search and seizure of their person and property, and their illegal and improper detention, prosecution and incarceration, for which there was no justification or legal basis. There was no process available to Plaintiffs to prevent or stop the Defendant ROBERTS, through WESTER, LEE, and ALLEN, and Allen and other officers, employees, and agents from taking these illegal actions against Plaintiffs.  The actions against Plaintiffs were taken knowingly, maliciously, and unlawfully, and under color of state law.

224.   Defendant ROBERTS misused and abused his power, possessed by virtue of state law and made possible only because he was clothed with the authority of state law.  The violation of Plaintiff's rights, as described above, occurred under color of state law and is actionable under 42 U.S.C. §1983.

225.   Defendant ROBERTS is a person under applicable law, and is liable to Plaintiff for the violation of legal and constitutional rights.  Defendant ROBERTS delegated final policymaking to WESTER, LEE, and ALLEN, and Allen and other officers, employees, and agents to make the decisions adversely affecting Plaintiffs.

226.   Defendant ROBERTS acted in bad faith, with malicious purpose, and in a manner exhibiting wanton and willful disregard for human rights, safety, and property.  Defendant ROBERTS was further deliberately indifferent in failing to properly train WESTER, LEE, and ALLEN, and Allen and other officers, employees, and agents  to prevent the harm that was caused to  Plaintiffs  including policies  or procedures to properly identify suspects who committed criminal activity; policies and procedures to identify officers who falsify facts to  support probable cause affidavits; policies and procedures to supervise officers/deputies in SHERIFF's employ; policies and procedures to detect officers/deputies who may engage in criminal activity by planting drugs on innocent citizens like Plaintiffs; and policies  and  procedures  to  properly  discipline  officers/deputies  who  willfully trample on the constitutional rights of law abiding citizens like Plaintiffs, and to prevent the type of harm described in part above

227.   The foregoing actions of Defendant ROBERTS   were willful, wanton and in reckless disregard of Plaintiff's rights, and were taken without any lawful justification.  Defendant ROBERTS knew or should have known that his deputies were abusing their power, in violation of both the United States Constitution and federal law.

228.   As a direct and proximate result of the actions of Defendant S ROBERTS, Plaintiffs have been damaged, which damages include: grave mental

anguish, pain and suffering, loss of capacity for the enjoyment of life,

embarrassment, humiliation, loss of reputation, lost employment opportunities, lost

wages, and the loss of other emoluments. These damages have occurred at present,

in the past, and will most likely occur in the future.

## COUNT XII
## FOURTEENTH AMENDMENT VIOLATIONS
### (Brought by All Plaintiffs Against Individual Defendants
### Lee, Wester and Allen)

229.   Paragraphs 1 through 142 are hereby re-alleged and incorporated by

reference in this Count.

230.   This count sets forth claims against Defendants WESTER, LEE, and

ALLEN for abuse of power and the violation of the Plaintiff's property and liberty

interests under the Due Process clause of the Fourteenth Amendment, brought

through U.S.C. §1983.  This count is set forth in the alternative and both the

procedural and substantive Due Process rights of the Plaintiff are implicated and a

claim for outrageous and shocking the conscious conduct is made herein.

231.   Defendants WESTER, LEE, and ALLEN violated the substantive and

procedural Due Process clause of the Fourteenth Amendment by conducting illegal

traffic stops, conducting illegal searches of Plaintiffs' vehicles and persons, placing

illegal drugs, drug paraphernalia, narcotics equipment and devices, and other

contraband on or around Plaintiffs, illegally arresting and detaining Plaintiffs,

causing the malicious criminal prosecution of Plaintiffs, making illegal false sworn statements in official documents regarding Plaintiffs, and violating the civil and constitutional rights of Plaintiffs against illegal search and seizure of their person and property, and their illegal and improper detention, prosecution and incarceration, for which there was no justification or legal basis. There was no process available to Plaintiffs to prevent or stop Defendants WESTER, LEE, and ALLEN from taking these illegal actions against Plaintiffs.  The actions against Plaintiffs were taken knowingly, maliciously, and unlawfully, and under color of state law.

232.   Defendants WESTER, LEE, and ALLEN misused and abused their power, possessed by virtue of state law and made possible only because they were clothed with the authority of state law.  The violation of Plaintiff's rights, as described above, occurred under color of state law and is actionable under 42 U.S.C. §1983.

233.   Defendants WESTER, LEE, and ALLEN are persons under applicable law, and are liable to Plaintiffs for the violation of legal and constitutional rights.

234.   Defendants WESTER, LEE, and ALLEN acted in bad faith, with malicious purpose, and in a manner exhibiting wanton and willful disregard for human rights, safety, and property by conducting illegal traffic stops, conducting illegal searches of Plaintiffs' vehicles and persons, placing illegal drugs, drug

paraphernalia, narcotics equipment and devices, and other contraband on or around

Plaintiffs, illegally arresting and detaining Plaintiffs, causing the malicious criminal

prosecution of Plaintiffs, making illegal false sworn statements in official documents

regarding Plaintiffs, and violating the civil and constitutional rights of Plaintiffs

against illegal search and seizure of their person and property, and their illegal and

improper detention, prosecution and incarceration as described in part above.

235.   The foregoing actions of Defendants WESTER, LEE, and ALLEN

were willful, wanton and in reckless disregard of Plaintiffs' constitutional rights, and

were taken without any lawful justification and resulted in the violation of the

Plaintiffs' constitutional rights.

236.   As a direct and proximate result of the actions of Defendants

WESTER, LEE, and ALLEN, Plaintiffs have been damaged, which damages

include: grave mental anguish, pain and suffering, loss of capacity for the

enjoyment of life, embarrassment, humiliation, loss of reputation, lost employment

opportunities, lost wages, and the loss of other emoluments. These damages have

occurred at present, in the past, and will most likely occur in the future.  Plaintiffs

are entitled to punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demands judgment against Defendants for the

following:

(a)     that process issue and this Court take jurisdiction over this case;

(b)     that this Court grant equitable relief against Defendants under the applicable counts set forth above, mandating Defendant's obedience to the laws enumerated herein and providing other equitable relief to Plaintiffs;

(c)     enter judgment against Defendants and for Plaintiffs awarding all legally-available general and compensatory damages and economic loss to Plaintiffs from Defendants for Defendants violations of law enumerated herein;

(d)     enter judgment against Defendants and for Plaintiffs permanently enjoining Defendants from future violations of law enumerated herein;

(e)     enter judgment against Defendants and for Plaintiffs awarding Plaintiffs attorney's fees and costs;

(f)     award Plaintiffs interest where appropriate; and

(g)     grant such other further relief as being just and proper under the circumstances, including but not limited to reinstatement.

## **DEMAND FOR TRIAL BY JURY**

Plaintiffs hereby demand a trial by jury on all issues herein that are so triable.

DATED this 2nd day of May 2019.

53

Respectfully submitted,


/s/ Marie A. Mattox
Marie A. Mattox [FBN 0739685]
MARIE A. MATTOX, P. A.
203 North Gadsden Street
Tallahassee, FL 32301
Telephone:  (850) 383-4800
Facsimile:   (850) 383-4801

ATTORNEYS FOR PLAINTIFFS